### In re SMITH.

(Supreme Court, Appellate Division, First Department. December 8, 1911.)

ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—SUFFICIENCY OF EVIDENCE.

In proceedings to discipline an attorney, evidence *held* to sustain a finding of the referee that the attorney had been guilty of gross professional misconduct in misappropriating funds belonging to his client, authorizing disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 53.*]

Application by the Association of the Bar of the City of New York to discipline Washington Smith, an attorney. Respondent disbarred. See, also, 135 App. Div. 924, 120 N. Y. Supp. 1146.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Einar Chrystie and Isham Henderson, for petitioner.
Charles E. Lydecker, for respondent.

INGRAHAM, P. J. This proceeding was referred to the official referee, who has reported that the respondent has misappropriated money of a client, the McCall Company, as alleged in the petition, and that the charge of gross professional misconduct is sustained, and on this report the proceeding is brought before the court for final action.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The respondent was admitted to practice in May, 1902, and in October, 1903, having determined to abandon the profession of the law and enter a mercantile business, applied to the McCall Company, a business corporation doing business in the city of New York, for a position as corresponding clerk, and was engaged by such company in such capacity at a salary of $20 a week. He continued in such employ in that capacity until the spring of 1904, when the McCall Company organized a department designated as the "legal department" and the respondent was placed at its head. He served in this capacity from May 9, 1904, until he left the employ of the McCall Company in April, 1906. Shortly after the establishment of this legal department, the respondent's salary was increased from time to time until he was paid $50 a week. He received this salary regularly until he left the service of the company. It is not disputed but that the relation between the respondent and the McCall Company, while he was in charge of the legal department, was that of attorney and client.

The first serious question of fact presented is as to the compensation that the respondent was to receive when placed at the head of the legal department of this corporation. The petitioner claims that his compensation for the services rendered to the company was the salary that he was paid and which he admits having received during the whole period of his connection with the company. The respondent claims that he was to be paid this salary, and, in addition thereto, was to be paid one-third of the commissions that he received from attorneys to whom claims of the company had been sent, when they divided such commissions with the respondent. There was evidence on behalf of the respondent that the plan for the establishment of a legal department was formulated by the respondent, and that, to induce the corporation to establish such a department, it was represented that the corporation could substantially reduce the expense involved in collecting small claims against its customers, as he, the respondent, would be entitled to receive from attorneys to whom such claims were sent for collection one-third of the fees for their services. It seems that attorneys to whom these claims were sent for collection were entitled to charge 10 per cent. of the amount collected; that when such claims were sent by a lawyer for collection, the lawyer sending the claims would be entitled to one-third of this 10 per cent. charged by the attorneys to whom the claims had been sent; and, as the respondent was a lawyer, he would be entitled to the return of that one-third of the 10 per cent., which, if received by the corporation, would, of course, reduce the fees that it had to pay for the collection of these claims by one-third. That question was sharply litigated before the referee, the respondent being the principal witness on his own behalf, and he testified again and again as to the making of this contract, by which he was to retain such one-third of the fees. Upon the whole testimony the referee has found against him on that contention and that his testimony in that respect was untrue.

It further appeared that for a considerable period after the establishment of this legal department the respondent turned into the com-

pany all money that he received from the various attorneys to whom he sent these accounts for collection; but after April, 1905, instead of turning in the checks sent to him, he retained certain checks, had them cashed, and appropriated the money to his own use, so that in April, 1906, when he left the employ of the company, the amount that the respondent had received and appropriated to his own use was about $1,532. These checks, which the respondent cashed, and the proceeds of which he appropriated, were not only checks which included the respondent's portion of the fees to other attorneys which were repaid to him, but also checks sent to him for collections made by these other attorneys for the account of his client. Thus it was not merely the percentage of the attorney's fees that the respondent collected and misappropriated, but the moneys actually collected on the claims, and which concededly belonged, not to the respondent, but to his client. As to this money that the respondent misappropriated he had actually no possible claim. It was a misappropriation of his client's money without the slightest possible excuse. In the month of April, 1906, the officers of the company were informed that the respondent had been collecting and appropriating a portion of these collections, when the president of the company inquired of the respondent about it, and then asked the respondent to sign a statement containing the terms of the contract between the respondent and the company, as testified to by the president. The respondent at that time, while not repudiating the truth of this statement as to the terms of his employment, stated that he wished to consult counsel before signing the statement, and subsequently left the employ of the company without signing it.

The respondent attacks the finding of the referee, claiming that a fair consideration of the testimony did not justify a finding that the respondent's account of the terms upon which he was placed at the head of this legal department was not true; but we think the finding of the referee was amply sustained by the evidence. The conduct of the respondent during his employment was such as to strongly corroborate the testimony of the president of the corporation as to the terms of the respondent's employment, and it was clearly established that no such arrangement as claimed by the respondent was ever thought of at the time the respondent was placed at the head of the legal department. The respondent appropriated this money, not under a claim of right to a portion of these return commissions, but as money that he knew he was bound to return to the corporation. If the respondent was acting under any such contract as he alleges he had at the time he was placed at the head of this legal department, some statement would have been made as to the amount of the return commissions that he received, or an account would have been kept showing the division of the commissions that were returned to the respondent. But during the first year that he was in charge of this department he turned over to the company all collections that he made for the company, including the commissions that he received, making no claim against the corporation for any part thereof, and this notwithstanding the fact that he at times collected his regular salary in advance of the time it became due. All this is entirely in-

consistent with his present claim, and his testimony before the referee is discredited. After this retention of money belonging to the corporation was discovered, the respondent brought an action against the corporation for legal services, claiming $10,000. That action seems not to have been prosecuted, and the corporation then commenced a proceeding against the respondent to collect the money that he had collected for it as attorney. In that case the respondent made the same claim that he made in this proceeding, and, after an investigation before a referee appointed by the Supreme Court, the respondent's claim was disallowed, and an order entered requiring him to pay to the company the amount of money that he had thus misappropriated. Subsequently, and after this proceeding had been commenced, the respondent complied with that order and repaid the money to the corporation.

The respondent's counsel in this case claims that the counsel was very badly advised in that proceeding, and that it was not properly defended, and therefore should not be considered on this application. It, was, however, a direct adjudication by a proceeding in the Supreme Court that the respondent's testimony as to the understanding under which he took charge of this legal department with the corporation was untrue, and the referee in this proceeding has retried the same question and arrived at the same conclusion. We are constrained, therefore, to confirm the report of the referee, as we think it clearly established that this respondent appropriated the money which under his agreement with the corporation belonged to it, and that he has attempted to sustain his appropriation of that money by false testimony, both in the original proceeding against him and before the referee in this proceeding. We are further satisfied, upon an examination of the testimony before the referee in this proceeding, that the appropriation of this money made by the respondent was not with the belief that he was taking money that belonged to him, but that he knowingly and intentionally misappropriated money that under his arrangement with his client belonged to his client and to which he had no right. The respondent, therefore, having been convicted of gross professional misconduct, which consisted of misappropriating money belonging to his client, the remaining question is as to the penalty which should be imposed for this offense.

We have again the position, that has presented itself lately in several proceedings of this character, of an attorney, being charged with misconduct, giving false testimony, and thus seeking to escape from the consequences of his professional misconduct by perjury. This is clearly not a case in which there could be any mistake or disagreement between the parties as to the terms of the agreement made between them, but a deliberate, though unsuccessful, attempt of the respondent to establish a contract which was never made, and which he well knew was never made, in order to escape the consequences of his misappropriation of his client's property. Whatever would have been the determination of this court if the respondent had frankly admitted his fault, I can see no escape from the conclusion that, when

he has deliberately attempted to escape the consequences of his misconduct by perjured testimony, he is no longer fit to remain a member of the profession.

It follows that the referee's report is confirmed, and the respondent disbarred. All concur.